21-30761, and I'm not sure how to pronounce this, Barosse or Brosse v. Huntington Ingalls, Incorporated. Mr. Flanagan. Good morning, and may it please the court. The state and federal governments have concurrent jurisdiction to legislate in the twilight zone along the water's edge. But does the twilight zone doctrine apply where the injured worker is not seeking redress under a compensation statute, but instead through the medium of an action at law? That's the question presented today, and it was the question presented long ago in the Oregon Supreme Court in 1958. The case was Hahn v. Ross Island Sand and Gravel Company. And the Oregon Supreme Court said, no, the twilight zone doctrine does not apply. Tort claims are different, but the United States Supreme Court granted certiorari, heard oral argument, and reversed. The plaintiff argued, as we argue today, that Oregon had concurrent jurisdiction. And the manner in which Oregon handled that concurrent jurisdiction was a question of state sovereignty. The employer disagreed and said the twilight zone doctrine applies to a choice between compensation systems, but not between federal compensation and a tort claim. Counsel, not to interrupt you so early into your argument, but in the Oregon case, isn't it true that the Oregon statute specifically provided for tort remedies, unlike the Louisiana statute here? Louisiana statute, as I understand it, I should say the relevant Louisiana statute, the version time-wise that we're talking about, doesn't speak to that. Is that correct? You're right, Your Honor. There were some minor wording differences between the Oregon statute and the Louisiana statute. The Oregon statute said that given certain parameters, in that case, if the employer didn't get redundant state coverage, there would be a tort claim. The tort claim was under a different statute, called the Oregon Employer Act. In Louisiana, our statutes work in the same way. Prior to September 1976, mesothelioma was not a covered claim. And so for that reason, as our Supreme Court said in Rando, there was no compensation bar. So at the end of the day, we get to the same place. Does having a tort claim frustrate congressional objectives? Because if having a state tort claim for an injury in the Twilight Zone frustrates what Congress intended, there's nothing that Oregon could have done about it. Under the Supremacy Clause, that state policy view would have yielded. And yet, it was the dissent in that case that makes Avondale's argument today. The dissent said that no one had supposed until today, 1959, that either Davis versus Department of Labor or the federal statute itself allowed an employee to spurn federal compensation and submit his claim to a state court jury. Yet only two justices held that view. So Hahn, in our view, Your Honor, defeats the notion that federal objectives in Section 905 demand an exclusive federal remedy. In fact, that goes back all the way to Davis in 1942. Because if there is a sacrosanct federal bargain, how can it be that Davis recognized, again, 80 years ago, that state compensation claims were allowed? On the face of Section 905, they wouldn't be. And how can it be that Sunship, in 1980, could say, even more generous state benefits do not offend anything Congress was intending to do? Is there anything, aside from Hahn and Davis, which, of course, are considerable weight, is there anything that you would argue to rebut? I understand that your opponent's argument has to do with preemption. And I'm sure he will talk about that. Is there anything else besides Hahn and Davis? In other words, any statutory authority or any other case law, for that matter, that refutes the notion of preemption? Well, Your Honor, we think it ultimately comes down to Davis. All roads lead to Davis, in other words, in a recognition of concurrent jurisdiction. And the debate that we're having here really played out in Davis. There was a separate opinion by Chief Justice Stone in that case, who essentially said that he couldn't understand how the majority would reach this system of dual sovereignty, overlapping jurisdiction. He said, in his view, 905 meant what it said. And he didn't go along with the majority. There were more dissents in Calbeck in the early 1960s. But by the time we get to Sonship, no one disputes the notion of concurrent jurisdiction. I would also reference to the recent Supreme Court case in Oklahoma versus Castro Huerta just last Wednesday, where the Supreme Court reminded us about concurrent jurisdiction and the idea that when a state has sovereignty to legislate in an area, Justice Kavanaugh said, it doesn't need a permission slip from Congress to exercise that jurisdiction. And I want to go back to Hahn, Your Honor, for one moment. Because this penalty theory that the district court adopted and Avondale embraces of Hahn is unpersuasive. The argument seems to be that section 905 is all important, represents this inviolate bargain. And yet, because Oregon wanted to promote Oregon policies, the requirement to get redundant state coverage, Oregon was empowered to displace section 905 to achieve state objectives. Well, we all know that under the Supremacy Clause, it doesn't work like that. Under the Supremacy Clause, Oregon would be powerless to promote its own objectives at the expense of section 905. Again, if Avondale's position is right that we have an inviolate bargain, this whole body of law is wrong. Because again, if we have a contract, a compact that is to be respected at all costs, there can't be any tinkering with it. This case turns instead on concurrent jurisdiction in the twilight zone. The court gave us an opportunity to brief de Benedetto. And it's a very useful case because it addresses both the preemption issues, relying on sonship, and also the unique state law. We had this schedule approach until September of 1975, where only particular illnesses and diseases could be covered by compensation. Mesothelioma, for whatever reason, was excluded. And so for that reason, as our Supreme Court has said, Louisiana law recognized tort claims for mesothelioma victims, including, as de Benedetto said, in the twilight zone. I've mentioned again that these cases all spring from Davis. And sometimes the separate opinions in cases can be very enlightening about what the majority was doing. And as I mentioned, Chief Justice Stone wrote separately to say he disagreed with this entire enterprise. He was making Avondale's argument that 905 must be respected. It applies. But Davis holds that 905 gains meaning only when we've already decided that we're on the federal side of the line. In fact, they said section 905 is of no assistance in deciding whether federal law apply to a particular situation. This court has addressed the Longshore and Harbor Workers Compensation Act from time to time, including in Rossetti, a case that was a federal benefit. And the Hetzel case from 1995 is even clearer. The court summarized Hahn in this way. An injured employee in the so-called twilight zone of concurrent jurisdiction could bring a state law negligence suit against his employer. And that's exactly right. But Hetzel turned on election of remedies, as so many of these cases do, because the plaintiff in Hetzel elected federal benefits. He embraced the Longshore Act. And having embraced the Longshore Act, he could no longer claim that his real interest lied in this federal sphere. In other words, in for a penny, in for a pound. That's one of the reasons why the district court got off track. The court treated these Longshore cases as interchangeable and relied on cases where workers elected federal benefits. Of course, once the worker chose to embrace the Longshore Act, that worker was stuck with the entirety of the act and couldn't pick and choose. That's what many of these cases say. If you embrace Longshore benefits, you can't supplement them by bringing a state law tort action, even in the twilight zone. So let me ask you, it would seem to me in reading the briefs that this plaintiff, Mr. Burros, is probably part of a small group of people that would fall into this category. And I wanted to see if you would agree, if you prevail in this case and the panel agrees with your position, we would be talking about, correct me if I'm wrong, maritime workers who are injured in the twilight zone, it'd have to be a twilight zone case, in Louisiana, before 1975, which is the statutory when mesothelioma becomes covered under Louisiana Workers' Comp, who chose not to seek LHWCA compensation, and whose injuries are not covered by the pre-1975 Louisiana Workers' Compensation Act. Are those guidelines, you would agree that those guidelines limit the types of claims that would be affected by a favorable ruling? I agree entirely. It's a very narrow path. And so it's a function of mesothelioma being a long-term latency disease. And so these plaintiffs are typically elderly. And yet, because of Louisiana law, we apply the law in effect. So there are very few of these cases. It's not correct to suggest, as some have, that this would open the floodgates of litigation. There's no opportunity for that, given the various parameters and the various means by which many of these cases would be excluded. So a claim like Mr. Barassa's that occurred, let's say an employee who began at Avondale Shipyards in 1976 or 77, his only remedy would be to elect either the federal compensation under Longshore or Louisiana Workers' Compensation, to the exclusion of other tort, remedy. Your Honor, I would modify the question slightly by posing 1977, because we had a one-year gap period where executive officers could potentially be sued as well. But starting in 1977, that's right. There's no argument for the worker to claim the ability to bring a tort suit in the Twilight Zone. Compensation would barred. And then after that, Longshore benefits after 1980, or 1989, I should say, would be the only remedy. So it's very narrow. But for the purposes of our case and within this narrow field, we have concurrent jurisdiction. It's unusual. But this case raises the question of, do we have concurrent jurisdiction in name only? In other words, if having a choice is a conflict, well, there's no such thing as concurrent jurisdiction. If you can choose A or you can choose B, but by choosing A, you create a conflict with B, well, then it's really an illusory remedy. But what Davis has shown in every case since then, concurrent jurisdiction is meaningful. And it is the opportunity for the plaintiff to disclaim federal law and for under state law, where 905, again, has no application, Davis tells us that, to bring claims. There's no conflict in that instance. I would ask, how would one write 905? And to find the textual basis to find a conflict. In other words, we know that Davis is in a conflict, so we'd have to exclude Davis from the wording. We know Sonship is in a conflict, and we know Hahn is in a conflict. There's no textual basis to say that 905 applies, but it has all of these exceptions. In fact, the Castro Huerta case, again, is a good reminder, this court previewed that in 2018 in the city of El Cenizo. There can't be this freewheeling process of finding wishes, hopes, intentions. This court and the Supreme Court looked to the text, and Castro Huerta said, the text of the law controls over purported legislative intentions unmoored from any statutory text. So what is the textual basis for Hahn and Davis? I obviously respect the fact that we're bound by those precedents, but. Exactly, and it's a very serious question as to Davis, and the Chief Justice couldn't see it. It's difficult to find it, except, I would say, Castro Huerta helps us understand that. And Castro Huerta says, there are times when federal law and state law both apply. So the statutory basis is, when federal law applies, all of the Longshore Act applies, including 905. But there's another sovereign that has the ability to legislate. And when that sovereign is exercising its authority, as it has a right to do, federal law does not come into play. Again, unless. Is your point that that's hard to square with the text, but it's what the Supreme Court said? Or do you actually, just out of curiosity, do you have a textual theory for these precedents? Your Honor, I would go with the former explanation. It's hard to understand, and it's for that reason. That's why there was this separate opinion by the Chief Justice, who was saying, I cannot understand this. Your point is basically, it may not be textually based, but there's no principled way of distinguishing these cases in this case, and therefore, we should reverse. There is no principled way to do it. So if the Supreme Court wants to get rid of all this on textual grounds, fine. But until then, we're bound to do this. I think it's fair to say. Your Honor, one more point. Congressional acquiescence. Castro Huerta, again, reminds us of the importance of that Wyeth did in 2009. Wyeth said the case for preemption is particularly weak when we've got decades of Supreme Court interpretations of laws, and Congress has not changed the law. That's the case here. There have been four attempts to change the law of the Longshore Act to make it exclusive, and they've all failed. The final point I would like to make is in terms of another district court error, finding cases to be interchangeable. The district court relied on four OCS, Outer Continental Shelf Act cases to find preemption. There is no twilight zone on the OCS. I'll reserve the rest of my time. Thank you. Thank you, Chief Judge Richmond, and may it please the court. Three basic principles govern this appeal and require affirmance of the decision below. First, Section 905A of the Longshoremen's Act establishes an exclusive workers' compensation remedy that displaces all actions for damages at law, except in one circumstance, where an employer fails to secure compensation insurance, which is not the case here. Second, as this court has recognized, the so-called twilight zone cases simply recognize concurrent federal and state jurisdiction with respect to workers' compensation remedies, which by definition are not actions at law. And third, the Longshoremen's Act rests on a quid pro quo, which is embodied in Section 905A of the Act, which is that in exchange for a no-fault guaranteed remedy to the injured employees, employers are freed of the unpredictability and potential hazards of damages actions at law. Allowing plaintiffs to pursue a state law damages action for negligence would both expressly conflict with the Act's provision in 905A and fundamentally frustrate the quid pro quo on which the Act rests. And that is not a narrow result, Your Honor. That would allow a large category of plaintiffs to simply opt out of the compensation scheme that Congress established and pursue a state law claim and drive a stake through the heart of the quid pro quo established by the Act. Counsel, let me ask you, prior to 1975, though, well, let's go back even further. Long before, let's go back to the Stone Ages,  was in tort. Before Longshore, before Louisiana workers' compensation was in tort. And as you mentioned, the grand bargain of the quid pro quo is immunity along with compensation via compensation insurance. Then along came the Longshoreman Harbor Workers' Compensation Act, and that was considered to be one opportunity for a maritime worker could take advantage of that or the state workers' compensation remedy. Do you agree with me up to this point? Under the Twilight Zone concept, that's correct, Your Honor. Okay. The workers' compensation. But prior to 1975, in the grand bargain in the quid pro quo, if mesothelioma is not included in the 1975 state compensation, at what point, what is the argument that the plaintiff loses the tort remedies that have always existed up to that point? Well, Your Honor, the purpose of the Longshoreman's Act. Okay, but he's opting out of that, though. He's opting out of that. He doesn't, with respect, he doesn't have the right to opt out of it. And the text shows that, Your Honor. There's one situation in which the plaintiff may elect to pursue a damages action at law. And this is in the second clause of 905A. And that's where the employer fails to secure the compensation, fails to opt into that scheme. That's what the act says. They're asking you to judicially create a second exception, which gives plaintiffs the right to simply opt out of the scheme, regardless of whether the employer has insurance, as Avondale conceivably does, and pursue a state damages action, which is directly inconsistent with what Congress said in 905A. It's also inconsistent with what Congress said in 913D, which is a tolling provision. And this is really important. The tolling provision says that where an employee does bring an action for damages at law, that's dismissed. On the ground that the employee is covered by the act, and the employer has provided insurance, as is true here, then the claim for compensation under the act is told. And that fits perfectly with your theory, which shows that Congress recognizes that if some employee is trying to bring a damages action for law, but he can't because of 905A, which says that you're a covered employee, and the employer has insurance, then we're gonna toll it so that they can pursue the compensation remedy, but we're not gonna allow the damages remedy to proceed. But that's not what happened in Hahn, though. Well, you're right, Your Honor. And I think Hahn is, obviously, he leads with that. That's their best case. And it's completely an opposite for this reason. First, as you recognize, the state tort claim in that case was an express feature of the state workers' compensation scheme. But I think even more important, in that respect, the Oregon State Workers' Compensation Scheme was exactly identical to the federal scheme. If you look at the second clause of 905A, it says, as the Oregon scheme did, that if the employer fails to secure insurance, then the employee may elect to bring a damages action at law. So allowing the state tort claim in Oregon and Hahn to proceed in no way frustrated the federal statute or interfered with 905A, because 905A would have allowed exactly the same thing in that situation. And Hahn is the only case they have. This court distinguished Hahn on that basis, albeit in a parenthetical in note 14 of the Hetzel case. The Third Circuit in the Hess Oil case explicitly distinguished Hahn on this basis. And with respect that the court just adopts plaintiff's theories, it would be creating a square circuit conflict with the Third Circuit decision. And as we've mentioned in our recent letter filing, many district courts recently have rejected Hahn on that ground. So they're asking you to be the first court, federal court ever to adopt that interpretation of Hahn. And that in effect would drastically extend the Twilight Zone concept, which frankly is sort of an historical anachronism. We accept it entirely for purpose of this case, but there's no court, no reason for this court to extend the Twilight Zone concept to apply not only federal and state concurrent jurisdiction as to workers' compensation remedies, which is what Davis explicitly says, Sunshift explicitly says, and even Hahn explicitly says that, but extend that to concurrent jurisdiction with the state tort remedies, which again, blows a hole through the whole compensation scheme and the quid pro quo established by the- Do you think Hahn is correct as a textual matter? I do, Your Honor. I think it can be squared as a textual matter. I mean, frankly, none of the Twilight Zone cases are textual cases or from a bygone era, but I think it can be squared with the text because the text of 905A, we've not argued that it's a complete preemption provision. It preempts- You're arguing conflict preemption, right? Well, we're arguing express and conflict. Oh, okay. With respect to express, 905A displaces actions for damages at law. And I think, although that was true, but it has to be read in conjunction with the second clause of 905A, which allows a plaintiff to elect an action for damages at law in the one situation where the employer fails to secure insurance. And you're saying that's what explains Hahn? That's exactly what happened- Whereas the opposite is true here? The opposite is true here. It's conceded in the statement of uncontested facts, paragraph two, filed below, that Avondale has secured compensation insurance and is participating in the federal compensation scheme. So that makes this case completely unlike Hahn. And this injury would be covered. Are you conceding? This injury would be covered. And because of the tolling provision in 913D, if this court affirms the decision below, then plaintiffs can pursue the remedy that Congress guaranteed in this situation, which is the compensation remedy. The Longshoreman's Act was created to ensure that there would be a remedy in situations in which states did not provide a remedy. In fact, that's explicit in the original version of the act, in 903A of the original version of the act. Perhaps I missed it, but did you argue express preemption in the district court? We did, Your Honor, in this respect. It wasn't a focus of our brief. We said that the plain language of the statute precluded the plaintiff's claim here. But did you specifically identify express preemption as a grounds for the district court to consider? I don't believe we said in those words express preemption. We relied specifically on the statute and we said it was preempted. I think this court can affirm on any ground. They've not argued that we've waived this argument, so I think any waiver argument would be waived. And we've very squarely in our briefs argued express preemption here. And that's frankly the way to resolve this case. I mean, Congress addressed this in 1927. That provision has been a feature of the act throughout. There's nothing in the Supreme Court's precedents that preclude this court from reaching express preemption. In fact, in Norfolk Shipbuilding, the Supreme Court and Justice Scalia explicitly recognized that the Longshoreman's Act expressly preempted all other claims as to the employer with the caveat as to state workers' compensation claims in the Twilight Zone. But again, that rule ultimately is not inconsistent with the text of the act, because what the text of the act does in 905A and reaffirms in 913D itself is that it expressly preempts actions for damages at law, which again are by definition not workers' compensations claims. Actions for damages at laws are going to a court and asking the court to adjudicate damages. And that's what they're asking for here, but that's expressly precluded by the act. Of course, if this court doesn't reach the express preemption ground, it can and should affirm on conflict preemption. This court in the Hetzel case and the Rossetti case, and Rossetti involved an employee at the same shipyard, the Avondale shipyard, has actually already rejected the theory here, which is that a plaintiff can opt out of the compensation scheme and bring a state tort action. Now, their response to those cases is that, well, here we've elected to pursue the state law tort claim. Again, that theory drives a hole through the compensation scheme and the quid pro quo. It's contradicted by this court's precedent in the Rossetti case at page 1085, where this court recognized that it's the status of the employee as a covered employee under the act that does the preemption, not whether the employee elects to pursue one claim or the other. And again, that's confirmed by the text of 905A of the act, which does identify the one situation in which Congress gave the employee the right to elect a tort claim, and that's where the employer opted out of the federal compensation scheme. It's that theory of the election, the remedy theory is also inconsistent with the Third Circuit's opinion in the Hess Oil case. So again, the court would be creating a conflict. Yeah, you focus obviously a lot on that express language of election, but I take it the Supreme Court's precedence, the rule is not coextensive with this provision. Well, the cases operate coextensive with that. Again, I mean, the Twilight Zone cases aren't textual cases, but Han is perfectly- Are you saying the rule ends up being coextensive? Yes, yes, because all of the Twilight Zone cases involve claims for concurrent state and federal compensation remedies. And Congress recognized that you can't- Maybe I'm misunderstanding it, but wouldn't the rule apply whether the employer has failed to secure or secured? Or am I misunderstanding it? No, the general rule in the first clause of 905A that you can't bring actions for damages at law would apply across the board. And that's consistent with the Supreme Court's precedent because the only case in which the court had allowed an action for damages at law was Han. And the Han case fits within the second clause of 905A. Right, I get that you're distinguishing Han on its facts, and as a factual matter, it then sort of maps onto the election clause. But doesn't the rule of Han apply differently? I don't think so. I mean, Han recognized that where, I mean, first of all, the court specifically mentioned the feature of the Oregon statute that made the failure to secure compensation a penalty. And that was the focus of Oregon and its amicus brief before this court. So that was mentioned on page 272 of the court's opinion. Okay, is your idea that lower courts are not necessarily reading it the same way? Or do you think- No, actually, all the lower courts that have addressed Han have read it our way. The Hess Oil case- That it only turns on this election concept? Yes, it turns on the penalty concept, that in Han, the state court claim was allowed because it served as a penalty for the employer- Who failed to- Failed to opt into the compensation- And you're saying that is the line that draws through all these cases? Well, it's a line that addresses Han, and it's the rationale that the Third Circuit adopted in Hess Oil. It's a rationale that this court acknowledged, I think, in footnote 14 of Hess Oil that Han did operate as a penalty. And our rule squares with all of the Supreme Court's precedents. I mean, they're relying on the Twilight Zone cases, Sonship and Davis, but those were cases where the workers pursued state compensation remedies. We don't dispute that the workers can pursue state compensation remedies where those remedies are available. But none of those cases give an employee the right to simply opt out of the compensation scheme, go to a state court to seek a jackpot damages award. Congress foreclosed that as part of the quid pro quo when it enacted the statute. And if this court adopts that theory- So you're saying that this plaintiff is limited to the Longshore Harbor Workers' Compensation Act? He is. And again, I mean, that's- Since he has no state compensation remedy, he is absolutely limited to the federal remedy of the Longshore Harbor Workers' Compensation Act. Right, and there's nothing wrong with that. I mean, again, the Longshoremen's Act was passed to ensure that there would be a remedy. Do you, can you distinguish Steve Benedetto or do you just flat out disagree that it was, just argue that it's wrongly decided? I mean, with all due respect to the Louisiana Court of Appeals, it's just wrong, Your Honor. And, you know, the Sonship case that it relies upon, Sonship itself explicitly makes clear that it's concurrent jurisdiction with respect to workers' compensation remedies. It didn't adopt this, it didn't rely on the HAM the way that they suggest. And, you know, the decision is wrong. And if the court followed to Benedetto, it would be in square conflict with the Hess Oil decision from the Third Circuit. The other point that I think is important to recognize is employees don't have the right to go to federal, to get the federal compensation remedy and add on to that the state compensation remedy. 903E of the Longshoremen's Act explicitly says that in the situation where the employee does recover under state law, that that's offset from the federal benefits scheme. So by saying that Mr. Bross and his heirs have to go through the federal scheme, you're not denying him anything that he would otherwise be entitled to, because he's not entitled to double-dipping in the state compensation remedies. But I don't think that's what they're arguing. Mr. Flanagan, I guess, will come up and tell us. I don't think he's arguing that he gets the state tort remedies pre-1975 and a claim on the Longshore Harbor workers. I think he's saying we elect not to get Longshore Harbor workers and avail ourselves of the existing law at the time of claiming the injury. I think you're exactly right, Your Honor. My point was only that I thought you'd refer to the absence of the state workers' compensation remedy. The fact that he's only entitled to the federal remedy doesn't deny him anything. It gives him the full benefit of the act. What he's not entitled to do under the express terms of the act, under this court's decision in Hetzel and Rossetti, and under the whole purpose of the act, is to simply say, no thanks. I don't want the compensation remedy. I wanna go to state court and shoot for the moon with a damages award and punitive damages and the like. Congress took away that opportunity and instead gave all maritime employees covered by the act the benefit of a no-fault compensation remedy. And that was the scheme that Congress- Well, if that were true, why would Congress care? Why would Congress carve out for an Oregon penalty state tort law remedy? If all Congress wanted to do was to give a no-fault Longshore Harbor Workers Act remedy, why would they sanction or also allow an Oregon state law penalty? Right, because- Is it you got a penalty under federal law if the employer does not obtain workers' comps? Right, because Congress said to employers, you don't get the benefit of that scheme if you don't participate in the scheme by obtaining compensation insurance. That makes perfect sense. And it serves as an encouragement to employers to participate in the scheme to ensure that those benefits are available to injured or deceased maritime workers. Okay, I'm sorry. I'm assuming that the employer does obtain federal comp coverage. And why would Congress say in that situation that you have no state remedy at all, but only if you fail to also get state workers' comp and then there's a penalty on you if you don't, then you get to elect. That doesn't make sense to me. So I think we're speaking, and I may not understand the question. I mean, as I understand how the statute works, Your Honor, is, and I think we agree on this, Congress said if you don't get, participate in the federal compensation scheme, then you don't get the benefit of- No, but if you do elect- But if you do elect to participate, then at that point, you get the benefit of the rule which says that you're immune from damages, actions at law. But they allow, under the Supreme Court decision, they allow the election. If you didn't get workers' comp, state workers' comp coverage, you can elect to go after a tort remedy under state law as opposed to the federal- Right, and that's obviously what the Supreme Court said in- So, and that- But again, I mean, the reason why that doesn't present a problem for us or the federal scheme is that is just mapping onto the federal scheme. The Oregon statute was just like the federal statute. So allowing the state claim in that case didn't in any way interfere with the federal scheme and didn't- Well, it does because the federal scheme promises protection for the employer who buys the federal workers' comp coverage. And they don't get the benefit of that if they didn't also buy state workers' comp coverage. They get to work, the employee gets to sue for the, gets to elect between the state law penalty and the purchased federal comp coverage. Isn't that what Ron said? Right, in the Twilight Zone world, Your Honor, where there's concurrent jurisdiction over workers' compensation remedy, I think that that result makes sense because what it says is, you can go to Oregon, the employee can say, look, under the Oregon workers' compensation statute, it entitles me to pursue a state tort claim if you don't secure compensation. And that's what they did. And so that was a concurrent compensation remedy case, not at all like this case. And Louisiana law isn't at all like the Oregon workers' compensation statute in Hahn. And if you have any doubt about that, I'd encourage you to read Oregon's amicus brief in Hahn. And so, and allowing that claim to proceed didn't frustrate with the purpose of the federal act, again, because the federal act provides the exact same penalty and in virtually all employers. You're saying the purpose of the act was to require employers to get double coverage in the Twilight Zone, that they need to purchase federal and state workers' comp if they're in the Twilight Zone. Well, I- That was the congressional intent. The purpose of the act, Your Honor, was to assure a compensation remedy and for those employers- And why would they care if there was a state law remedy? It's all- Well, it gets back to the Twilight Zone, Your Honor. I mean, all- That's what I'm asking. Is Congress, was Congress saying, if you're in the Twilight Zone, you have to have coverage of both or else you might be subject to a state penalty in a state like- No, I mean, Congress, ultimately Congress wanted to assure that there would be at least a compensation remedy available. In fact, if you go back to the original act and the amendments, that's what they made clear. Because of the Twilight Zone concept, the Supreme Court, because of the jurisdictional haziness of what would be covered for land-based injuries, wanted to assure that there would be state compensation remedy in the event that the federal remedy somehow wasn't covered or vice versa. And that's why we have the Twilight Zone. And PON is a feature- When there's no federal coverage. Well, the Twilight Zone concept is theoretical and maybe, you know, frankly, not the best design scheme. But anyway, it was designed to ensure that because there might be debate about whether someone was covered or not covered and someone might go to the state court and find out they weren't- You're saying Congress did want employers in the Twilight Zone to buy both state and federal comp? I think, I mean, I think that's a consistent with the understanding of the Twilight Zone. But frankly, Congress was focused on participation in the federal scheme. And I think most employers who have federal compensation insurance are gonna have state compensation insurance as well. I mean, what is different about this case is the worker here isn't trying to go through Louisiana's workers' compensation scheme. He acknowledges that that didn't exist at the relevant time. He's saying that he can opt out of the federal scheme and go to state court to file a state court remedy. I think we've got your- No federal court has adopted that position. We'd encourage this court to affirm the district court below. Thank you so much. Would you add two minutes to Mr. Flanagan's time? May it please the court. Chief Judge Richmond, I'd like to begin with your discussion of Hahn. The employer in Hahn did everything asked of it by federal law. It had federal loan short compensation coverage. That worker had a guaranteed way to get those benefits. And yet, because Oregon had a different policy, and Oregon for its own purposes wanted state coverage, Oregon was allowed to do that in the Twilight Zone. I disagree with counsel when he says it's just like the federal scheme. Because the consequence of that would be Oregon compensation benefits could be different. They're not always the same. Sunship says even more generous benefits. Let me ask you this. If you're just looking at state policy and the federal, the Congress is giving breathing room for the state policy, the Louisiana state policy will cover these illnesses, but not mesothelioma. So the state's not saying, they're not saying we want you to have a private cause of action necessarily. Well, the state of Louisiana has said, I sometimes think of our civil court article 2315 as like the atmosphere, the background. There's always a tort claim if someone acts unreasonably. The question of compensation is whether it applies, and if so, it imposes a bar. So that's what compensation is. It's an affirmative defense. After all, it can be waived. The tort claim is always there. My professor in law school said that it was like the creation story that let there be torts, and it was article 2315. So the tort claim is always there. The statute would... But then if the federal workers' comp scheme gives no protection in the twilight zone, unless you buy both, it seems to me. Well... Because it would have been meaningless. The bar would be meaningless if you have the federal comp in the twilight zone. And that's why we think the penalty theory of Hahn is unpersuasive, because the penalty theory of Hahn says that 905 gives way when a state wants to encourage behavior that the state legislature has required. But basically, to me, you're saying that federal coverage standing alone in the twilight zone is ineffective. Well, it would depend upon the state's law. And if a state like Oregon said there is a possible tort claim, if there's not also state insurance, Oregon has that right. But it's concurrent jurisdiction. That's why Louisiana has the same right to legislate in the twilight zone. This is its sovereign territory. And I would submit that even though our opponent styles their argument as conflict preemption, it really is a disguised complete preemption argument. Because if the theory is that there is a grand bargain and Congress has said the employer gives up something, the employer gets something, well then there can't be any changes to it at all. Not the changes of Davis with compensation, not the changes of Oregon in allowing a tort claim. And yet this court said in Aaron versus National Union in 1989, the Longshore Act does not cause complete preemption. So much of Avondale's argument is cobbled from dissents and separate opinions from Davis to Calbeck to Hahn. These arguments were made in those separate opinions where those justices wrote impassioned opinions saying that 905 means what it says, but they wrote for themselves. And so much of Avondale's argument, I would submit starts in second gear. It starts as though we're applying 905 and let's look at the exceptions to 905. Davis tells us, not so fast. 905 gains meaning, that was its term, only when we're already on the federal side of the line. And it in fact said, 905 is of no assistance in telling us whether state law applies. This is a matter of concurrent jurisdiction. If Avondale's argument is wrong, is correct I should say, then Davis is wrong and Hahn is wrong and Sunship. If there is a grand bargain, what justification can there be to say that a state has the ability to give more generous benefits? What if the benefits were two times federal benefits or even three times? If 905 applied, the employer could validly say, well, that seems unfair. I thought I had a bargain here, but essentially that has been decided 80 years ago. Now it's true, Sunship, Davis dealt with compensation benefits. That's because in those states, in the twilight zone, workers had to apply for compensation. They didn't have a tort remedy. So the court wasn't speculating and wasn't saying in a different situation the rule would be different. Pennsylvania and Washington had comp statutes. What effect does the 905 preemption provision have in a state, in an area, in a twilight zone case when a state has no workers' compensation scheme? If it has no workers' compensation scheme, most likely it would have a generally applicable tort claim. So do you have a case that says that in twilight zone cases, there's no state comp law, you just get to rely entirely on the common law? I would say DiBenedetto and Poche from Louisiana would be the best authorities for that. No federal cases? No, well, again, Han, there was no state remedy in Han because of the employer's decision not to get state coverage. But ultimately, and our opponent distinguishes Han factually, but the commonalities are much more predominant. In both, there was no state comp remedy. In both, there was no state comp bar. In both, the states allowed the worker to take his claim to a state court, plead it in front of a jury, and get pain and suffering damages. Now, if the supremacy clause means anything, and if 905 truly applied in the twilight zone, notwithstanding a state's policy choices, Davis could not have allowed a state remedy. Han could not have allowed a state remedy for any reason. That would be inverting the supremacy clause and saying that an employer who did everything right nevertheless lost this mandatory federal protection because Oregon said so. That wouldn't be the supremacy clause at all. I wanna just end on this note of congressional acquiescence because it's been clear for 80 years now, again, notwithstanding legitimate arguments to the contrary, that states have a right to legislate in the twilight zone, including giving tort claims. And yet Congress, for 80 years, has done nothing to try to claim exclusive jurisdiction. And the Supreme Court and this court have never denied a tort claim to a twilight zone worker who did not embrace federal law. Thank you, judges. Thank you, counsel. That will conclude the arguments in front of the panel.